IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

NATIONWIDE AGRIBUSINESS
INSURANCE COMPANY, etc., :

    Plaintiff, :

                                         Case No. 3:18-cv-166

    v. : JUDGE WALTER H. RICE

DAVID MARTIN :
CONSTRUCTION COMPANY, et
al., :

    Defendants.

---

DECISION AND ENTRY OVERRULING: PLAINTIFF'S MOTION TO EXCLUDE TESTIMONY OF DEFENDANT DAVID MARTIN CONSTRUCTION COMPANY'S EXPERT RICHARD MARZOLA (DOC. #60) AND CHARLES PLUMBING'S MOTION IN LIMINE TO EXCLUDE TESTIMONY OF CUSTOM HEATING'S EXPERT KERRY AUTIO (DOC. #64)

---

Before this Court are two motions *in limine* related to expert witnesses: Nationwide Agribusiness Insurance Company's Motion to Exclude Testimony of Defendant David Martin Construction Company's Expert Richard Marzola ("Motion to Exclude Marzola"), Doc. #60, and Third-Party Defendant, George Robert Charles, dba Charles Plumbing's Motion *in Limine* to Exclude Testimony of Kerry Autio ("Motion to Exclude Autio"), Doc. #64.

Defendant, David Martin Construction Company ("Martin Construction"), has filed a memorandum in opposition, Doc. #83, to the Motion to Exclude Marzola and Nationwide Agribusiness Insurance Company ("Nationwide" or "Plaintiff") has filed a reply, Doc. #87.

Nationwide has filed a memorandum joining in the Motion to Exclude Autio, Doc. #74, and Martin Construction and Custom Heating & Air conditioning, Inc., have filed responses in opposition, Doc. ##80 and 84, respectively. Third-Party Defendant, George Robert Charles, dba Charles Plumbing ("Charles Plumbing"), has filed a reply, Doc. #89, in which Nationwide has joined, Doc. #92.

## I. Background and Procedural History

Nationwide, the insurer of the home of Kent and Joan Darding, files this suit for subrogation against Martin Construction and Custom Heating & Air Conditioning, Inc.  The Amended Complaint alleges that an early morning fire occurred at the Darding home on January 29, 2017, originating at "the location above the basement fireplace and directly below the first[-]floor fireplace at the front bottom face of the fireplace hearth and extension." Doc. #20, PAGEID#140. Plaintiff alleges that Martin Construction, the builder of the home, and Custom Heating, a subcontractor, "fabricated, assembled, supplied, constructed and installed the fireplaces in the Darding home, including all components, framework and connections necessary for same." Id.  Charles Plumbing, a third-party defendant, installed the gas starters in the basement and first floor fireplaces.

Doc. #73, PAGEID#2158.   The Amended Complaint alleges that Martin Construction is in breach of a March 16, 2011, contract it entered into with the Dardings to construct their home. Doc. #20, PAGEID#154.  Nationwide further alleges that it is the third-party beneficiary of a "Subcontract" between Martin Construction and Custom Heating.  *Id*., PAGEID##166-169.  The "Subcontract" is dated June 4, 2012, and captioned "Registered Builder Contract." *Id.*  Nationwide also alleges negligence claims against both Custom Heating and Charles Plumbing.

Martin Construction filed a cross-claim against Custom Heating for "indemnity, contribution and /or apportionment," Doc. #24, and a third-party complaint against Charles Plumbing, Doc. #21.  Nationwide has asserted a third-party claim, pursuant to Fed. R. Civ. P. 14(a)(3), against Charles Plumbing, Doc. #26.

Each of the four parties have retained expert witnesses to determine the cause and origin of the fire: Jim Hunter and Nick Leone identified by Plaintiff; Kerry Autio identified by Custom Heating; David Jansing identified by Charles Plumbing; and Richard Marzola identified by Martin Construction.

Nationwide's two experts opine that the first-floor fireplace insert was improperly installed because David Martin of Martin Construction failed to put metal safety strips at the gap located between the wood burning fireplace insert and the hearth directly in front of it.  Custom Heating's expert agrees with Nationwide's experts.   Marzola and Autio, however, each contend that, in

3

addition to the failure to install the metal safety strips, there are additional causes for the fire.

Nationwide seeks to bar the testimony of Marzola, because he is unable to identify the origin of the fire, stating that there are three potential causes, and fails to state his opinion of the fire's cause within a reasonable degree of certainty. Doc. #60-1, PAGEID#1615. Plaintiff also argues that Marzola lacks a sufficient factual basis for his opinions. *Id*.

Charles Plumbing asserts that Autio's testimony is unreliable, because he failed to perform his investigation in accordance with "NFPA 921"[1] and his report lacked adequate peer review. Doc. #64, PAGEID#2097-2098. He also argues that this testimony is unreliable because Autio did no testing of his hypothesis as to the cause of the fire.

## II. Motions *in Limine*

Although neither the Federal Rules of Evidence nor the Federal Rules of Civil Procedure explicitly authorize the Court to rule on an evidentiary motion *in limine*, the Supreme Court has noted that the practice of ruling on such motions "has developed pursuant to the district court's inherent authority to manage the course of trials." *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984). The purpose of a motion *in limine* is to allow the Court to rule on issues pertaining to evidence in

---

[1] National Fire Protection Association 921, Guide for Fire and Explosion Investigations.

4

advance of trial in order to both avoid delay and ensure an evenhanded and expeditious trial. See *Indiana Ins. Co. v. Gen. Elec. Co.*, 326 F. Supp.2d 844, 846 (N.D. Ohio 2004) (citing *Jonasson v. Lutheran Child & Family Servs.*, 115 F.3d 436, 440 (7th Cir. 1997)). Pretrial orders also often save the parties time and cost in preparing for trial and presenting their cases.

Courts are generally reluctant to grant broad exclusions of evidence in limine, however, because "a court is almost always better situated during the actual trial to assess the value and utility of evidence." *Koch v. Koch Indus., Inc.*, 2 F. Supp.2d 1385, 1388 (D. Kan. 1998); accord *Sperberg v. Goodyear Tire & Rubber Co.*, 519 F.2d 708, 712 (6th Cir. 1975). A court should not make a ruling *in limine* unless the moving party meets its burden of showing that the evidence in question is clearly inadmissible. *Indiana Ins. Co.*, 326 F. Supp.2d at 846; *Koch,* 2 F. Supp.2d at 1388. If this high standard is not met, evidentiary rulings should be deferred so that the issues may be resolved in the context of the trial. *Indiana Ins. Co.*, 326 F. Supp.2d at 846.

### III. Legal Discussion

#### A. Introduction

Fed. R. Evid. 702, governing expert witness testimony, provides as follows:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

5

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), the Supreme Court announced the standard for the admission of expert scientific testimony in a case involving the prescription anti-nausea drug, Benedectin. It held that the trial judge is to act as the gatekeeper and exclude expert witness testimony if is it not both relevant and reliable. *Daubert* provided four non-exclusive factors to assist in determining the reliability of the expert's methodology:

> (1) whether the theory or technique has been tested;
> (2) whether the theory or technique has been subjected to peer review and publication;
> (3) the known or potential rate of error of the method used and the existence and maintenance of standards controlling the technique's operation; and
> (4) whether the theory or method has been generally accepted by the scientific community.

*Daubert*, 509 U.S. at 593-94, 113 S.Ct. 2786. In *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 148, 119 S.Ct. 1167 (1999), the Court clarified *Daubert* by applying Rule 702 to expert testimony based on technical or other specialized knowledge.

6

*Kumho Tire*, however, made clear that reliability is "flexible" and that the four *Daubert* factors are not a "definitive checklist or test" and must be tailored to the facts of the particular case. *Id.*, (quoting *Daubert*, 509 U.S. at 593, 113 S.Ct. 2786.) Accordingly, although the court has the ability to exclude expert witnesses if the requirements of Rule 702 are not satisfied, it cannot weigh the facts or evaluate the correctness of the expert witness's conclusions. These tasks are for the jury. *Stollings v. Ryobi Techs., Inc.*, 725 F.3d 765 ((7th Cir. 2013)

### B. Motion to Exclude Marzola (Doc. #60)

Nationwide contends that Marzola opinions are "unreliable" and, ultimately, inadmissible at trial. It asserts that his expert testimony must be excluded for the following reasons: (1) his opinions concerning the first floor fireplace are only based on observations that he made of the basement fireplace; (2) as an electrical engineer, he lacks the necessary qualifications to conduct this investigation; and (3) he offers no opinion of the fire's cause and instead states it is "undetermined" thereby indicating that he "has no opinion at all." Doc. #60, PAGEID##1612 and1617.

Mazola has opined that there are three potential "scenarios" that caused the fire: (1) the failure of Martin Construction to install the metal safety strips when the fireplace insert was installed by David Martin; (2) the failure of Custom Heating to install the fireplace flue at a proper distance from the wood framing so

7

as to prevent pyrolysis[2]; and (3) the failure of Charles Plumbing to insulate the "knockout hole" on the right side of the fireplace insert when it installed the propane gas supply line to the fireplace. Marzola further stated that because none of the three "scenarios" was more than "50 percent probable to being the cause" of the fire, the cause is "undetermined" under the NFPA.

### 1. Failure to conduct "basic analysis or calculations" to determine the cause of the fire

Nationwide argues that Marzola's testimony should be excluded due to his failure to conduct any "basic analysis or calculations" to determine the cause of the fire. Instead, he used measurements from the basement fireplace to determine how close the first-floor flue was to the wood framing on the chimney chase way. Nationwide contends that because this expert conducted no physical analysis of whether pyrolysis occurred and made no determination of how long it would have taken for the wood to pyrolyze, his testimony is unreliable and should be excluded.

Marzola was deposed as on cross-examination. Attached to his deposition is a 57-page report explaining his conclusions. Doc. #58-1. His report details the documents he reviewed, including the fire department and expert reports and depositions of the Dardings and David Martin. It includes approximately 30 pages of photographs of the fire scene. Doc. #58-1. His report states that the

---

[2] Marzola defined pyrolysis as the process of wood drying out and resulting in the lowering of the ignition temperature. Doc. #58, PAGEID#1272.

8

methodology utilized in his investigation was "[t]he Scientific Method, in accordance with the requirements of NFPA 1033, Standard for Professional Qualifications for Fire Investigator, 2014 Edition, and the principles of NFPA 921, Guide for Fire and Explosion Investigations, 2017 Edition." Doc. #58-1, PAGEID#1323.  The report also states that he conducted two site examinations of the "structure and remaining contents." *Id.*, PAGEID#1326. "Burn patterns were analyzed" and the downstairs fireplace was removed and documented. *Id*. Marzola also examined the evidence that was in the possession of Plaintiff's experts and again analyzed and evaluated "[P]otential ignition sources." *Id.*

Mazola testified that by the time he arrived at the Darding home, the first floor fireplace insert had been removed and the fire had consumed the wood, including the OSB board under the first-floor fireplace.  Doc. #58, PAGEID##1274 and 1280.  He reviewed photographs taken by one of Plaintiff's experts.  These showed that, after the fire, the fireplace insert had "shifted downward and to the right." *Id.*, PAGEID#1281.  He stated he was unable to determine how much heat would have escaped from the allegedly uninsulated opening for the propane gas supply line, since it would depend on the amount of wood being burned in the fireplace. *Id.*, PAGEID#1279.  He did no testing to determine this. *Id.*, PAGEID#1290.

Marzola was not questioned in his deposition why he did not do any testing to confirm his opinions. Nor was he asked what certain tests would have proven had he done them.

9

In the Court's view, Nationwide's criticisms of Mazola as to his lack of analysis or calculations are insufficient to exclude his testimony as an expert witness. His report indicates he reviewed all the relevant material available, examined evidence removed by Nationwide's expert and applied the appropriate standards in the NFPA. To the extent, *arguendo*, that his opinions are based on faulty assumptions, are not sufficiently supported by facts and data, or are not based on reliable scientific methodology, those deficiencies are best explored at trial through cross-examination and weighed by the jury.

### 2. Lack of Qualifications

Nationwide next asserts that Mazola should be excluded from testifying because he is an electrical engineer and not a mechanical engineer. As such, Plaintiff argues, he lacks a "fundamental qualification" necessary to investigate this fire loss. Doc. #60-1, PAGEID#1617. Mazola's deposition testimony, however, indicated only that he agreed with the statement that mechanical engineering principles come more into play in connection with the issue of installation of propane lines than electrical engineering. Doc. #58, PAGEID#1262. He did not state in his deposition that he was not qualified. His testimony and curriculum vitae indicate that he has testified as a fire cause and origin expert, is a certified fire investigator, a member of professional associations related to fire investigations and has attended numerous seminars concerning fire investigations. Doc. #58-1, PAGEID##1374-1378. Plaintiff's arguments that Mazola is not qualified to testify as an expert witness or is not as qualified as Plaintiff's

10

experts, are issues for cross-examination and not a basis for exclusion of his testimony.

### 3. Failure to Determine a Cause of the Fire

Plaintiff argues that because Mazola identified three potential causes of the fire, all related to installation issues, and concluded that the cause of the fire was "undetermined," he "has no opinion at all" and "cannot support any of his stated fire cause possibilities." Doc. #60-1, PAGEID#1617. Additionally, Nationwide asserts that an expert must state an opinion within a reasonable degree of scientific certainty and on a more probable than not basis. *Id.*, PAGEID#1615. Because Mazola testified that none of the three possible causes of the fire are greater than 50 percent and that the cause of the fire is undetermined, Nationwide asserts that his testimony must be excluded.

Mazola testified that, after investigating and completing his investigation of the fire, he arrived at three potential causes, did not find any of the three causes greater than 50 percent and found the fire to be "undetermined" in accordance with NFPA 921. *Id.*, PAGEID#1289. As an expert witness, Mazola's opinion must be stated in terms of probability. *Stinson v. England*, 69 Ohio St.3d 451, 633 N.E.2d 532 (1994). He is however, permitted to rebut Plaintiff's expert opinion by espousing alternative causes to "contradict the plaintiff's expert testimony that a particular cause was the probable cause of the injury. (citation omitted)." Additionally, *Stinson* does not "foreclose expert testimony that it is impossible to determine the cause of a plaintiff's injuries." (citation omitted). *Id.* at *6. *Fritch v*

11

*The Univ. of Toledo College of Medicine*, No. 11AP-103, 2011 WL 3925697, at *4 and *6 (Ohio Ct. App. Sept. 8, 2011).

In order to be admissible at trial, Ohio law requires that Mazola' opinions be stated in terms of probability and not possibility. *Stinson*, 69 Ohio St. 3d at 456. The Court, however, cannot exclude this witnesses's opinions based on his deposition testimony. Moreover, stating that the cause of the fire is "undetermined" is itself an opinion that rebuts Plaintiff's theory of liability. *Fritch*, 2011 WL at *6. Accordingly, Marzola's opinions cannot be excluded, if at all, until the underlying facts and data on which his opinions are based are presented in evidence and he responds to questions asked as on direct examination. The challenges raised to the lack of foundation of his opinions are matters to be explored through cross-examination at trial.

### C. Motion to Exclude Autio (Doc. #64)

Third-Party Defendant, Charles Plumbing, has filed a motion to exclude the testimony of Custom Heating's expert witness, Autio. Doc. #64. Nationwide joins in the motion. Doc. # 74. These parties contend that Autio's testimony should be excluded because his report was not subjected to appropriate peer review and there was no testing of his opinions. Additionally, Charles Plumbing and Plaintiff argue that Autio's opinions violate NFPA 912 § 19.7.4.

Autio testified that there are two possible causes of the fire: (1) the uninsulated opening in the fireplace insert that permitted heat to transfer into the

12

chase way allegedly pyrolyzing the wood framing and (2) embers that escaped from the front of the fireplace landing on the OSB wood and catching fire. *Id.*, PAGEID#1409. He stated that both theories were equally plausible. *Id.*, PAGEID#1425. He also testified that the alleged lack of insulation was a "probability," and the theory of the embers coming out of the fireplace through the gap "was hard to imagine" and the "heat transfer" is "more of a possibility." *Id.*, PAGEID##1428 and 1438.

### 1. Lack of Peer Review

Charles Plumbing argues that Autio's testimony should be excluded because it contained numerous typographical errors, including repeatedly referring to the date of the incident as February 1, 2019, and stating that investigative events occurred in 2019 when they occurred in 2017. According to Autio's deposition, Brian Gray, an individual in his office, performed both a "technical" and "peer review" of his report. Doc. #59, PAGEID#1403. Charles Plumbing concedes that "peer review is not a singular factor in a *Daubert* analysis," but that the lack of any detailed review "adversely impacts any claim by any party relying on Autio's opinions that they are reliable." Doc. #64, PAGEID#2098

The Court will not exclude the testimony of this expert witness based on typographical errors. Criticisms of Autio's report due to the alleged numerous errors of dates and other similar matters stated in his report are best addressed on cross-examination.

### 2. Lack of Testing

Charles Plumbing and Nationwide also move to exclude Autio's testimony, because of his failure to conduct any testing supporting his opinion that a "possible cause" of the fire was a "heat transfer" from the uninsulated opening on the right side of the fireplace insert where the propane gas supply line entered. The heat transfer from the uninsulated opening, according to Autio, resulted in pyrolysis of the wooden framing. This expert admitted that there was approximately a one-foot air gap between the allegedly uninsulated opening and the wooden framing and that air is "not a good conductor of heat. Autio also testified that he did not know what level of heat was required to create the pyrolysis that ultimately caused the fire and that he did no testing of this opinion. Doc. #59, PAGEID#1434.

By the time that Autio arrived and inspected the fire scene, the wooden "framing members" around the firebox had been consumed by the fire. *Id.*, PAGEID#1434. Additionally, the upstairs fireplace insert had been removed by Plaintiffs' experts. *Id.*, PAGEID#1429. Autio, however, did inspect the downstairs fireplace and noted that there was no insulation used on the opening for the propane gas supply line. He testified that his opinion is based on the difference in the burn patterns that he observed on the right side of the framing of the chase way of the first-floor fireplace as opposed to the left side of the chase way. As a result of the burn patterns, as well as the lack of insulation in the basement fireplace opening, Autio determined that the cause of the fire was due to a heat

14

transfer from the propane gas supply line's uninsulated opening. *Id.*, PAGEID#1426.

*Daubert* includes testing as a factor to be considered by a trial court in assessing the admissibility of expert testimony. This inquiry, however is flexible "with an overarching goal of assessing the 'scientific validity and thus the evidentiary relevance and reliability' of the principles and methodology underlying the proposed expert testimony." *United States v. Lanaan*, 263 F.3d 613, 621 (6th Cir.2001) (citation omitted). The trial judge "must have considerable leeway" in determining the reliability of expert testimony. *Kumho Tire Co.*, 526 U.S. at 152.

Although Autio did no testing for his heat transfer theory, his opinions were based on burn patterns that he observed at the fire scene. Based on this testimony, the lack of testing is not enough to exclude this testimony. *Clay v Ford Motor Co.*, 215 F.3d 663 (6th Cir. 2000) (no abuse of discretion for district court to admit testimony of expert witness in rollover accident case who did not inspect vehicle and did not test theory that vehicle oversteered and that its suspension caused "jacking"). Charles Plumbing and Nationwide's argument that the testimony is unreliable due to lack of testing goes to the weight of the testimony and not its admissibility.

### 3. Violation of NFPA 921

Charles Plumbing and Plaintiff next argue that Autio's testimony should be excluded because he identified two "possible causes" of the fire and did not

15

classify the fire as "undetermined" under NFPA 921. Additionally, they argue that Autio's testimony is speculative since he refers to the causes of the fire as "possible" and provides no basis for his opinion.

NFPA 921 states that "[I]f the level of certainty of the opinion is only "possible" or "suspected," the fire cause is unresolved and should be classified as undetermined." Autio's failure to comply with NFPA 921, however, does not require this Court to exclude his testimony. Although he testified in his deposition that he complied with the NFPA, this apparent contradiction goes to the weight and not the admissibility of his testimony. Finally, Ohio law requires opinions to be expressed in terms of probabilities and not possibilities. *Stinson*, 69 Ohio St. 3d at 456. Autio testified in his deposition that the alleged lack of insulation was a "probability" and the theory of the embers coming out of the fireplace through the gap "was hard to imagine" and the "heat transfer" is "more of a possibility." *Id.*, PAGEID##1428 and 1438. At this time, the Court will not exclude the expert testimony of this witness due to alleged speculation. Whether the causality of the embers and the heat transfer will see the light of the courtroom day, will be determined at trial.

**IV. Conclusion**

For the reasons set forth above, Nationwide's Motion to Exclude Testimony of Defendant David Martin Construction Company's Expert Richard Marzola, Doc.

#60, and Charles Plumbing's Motion *in Limine* to Exclude Testimony of Custom Heating's expert Kerry Autio, Doc. #64, are OVERRULED.

Date: October 26, 2020

_____ (tp - per Judge Rice authorization after his review)
WALTER H. RICE
UNITED STATES DISTRICT JUDGE

17