IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

NATIONWIDE AGRIBUSINESS
INSURANCE COMPANY, etc.,             :

                                     :
        Plaintiff,
                                            Case No. 3:18-cv-166
                                     :
        v.                                  JUDGE WALTER H. RICE

                                     :
DAVID MARTIN
CONSTRUCTION COMPANY, et             :
al.,
                                     :
        Defendants.

---

DECISION AND ENTRY SUSTAINING MOTION FOR SUMMARY JUDGMENT OF
DEFENDANT CUSTOM HEATING & AIR CONDITIONING, INC. (DOC. #50);
SUSTAINING MOTION OF THIRD-PARTY DEFENDANT GEORGE ROBERT
CHARLES, DBA CHARLES PLUMBING TO STRIKE PARAGRAPH 7 OF THE
AFFIDAVIT OF DAVID MARTIN AND OVERRULING MOTION TO STRIKE
REMAINDER OF AFFIDAVIT; AND OVERRULING MOTION FOR SUMMARY
JUDGMENT OF THIRD-PARTY DEFENDANT GEORGE ROBERT CHARLES, DBA
CHARLES PLUMBING (DOC. #63)

---

        Before the Court are two motions for summary judgment: Defendant,

Custom Heating & Air Conditioning, Inc.'s Motion for Summary Judgment

("Custom Heating's Motion"), Doc. #50, and Third-Party Defendant, George

Robert Charles, dba Charles Plumbing's, Motion for Summary Judgment

("Charles Plumbing's Motion"), Doc. #63.

Custom Heating's Motion is not opposed by Plaintiff, Nationwide Agribusiness Insurance Company ("Plaintiff" or "Nationwide"), Doc. #75. Also, George Robert Charles, dba Charles Plumbing ("Charles Plumbing"), does not oppose the motion although he asserts that the testimony of Custom Heating's expert witness, Kerry Autio ("Autio"), is inadmissible.[1] Doc. #79. Defendant, Martin Construction Company ("Martin Construction"), has filed a memorandum in opposition, Doc. #81, and includes as an exhibit an affidavit of David Martin ("Martin Affidavit"). Doc. #81-1. Custom Heating has filed a reply. Doc. #85.

Nationwide does not oppose Charles Plumbing's Motion, Doc. #63, and Custom Heating has not filed a response. Martin Construction, however, has filed a memorandum opposing the motion, Doc. #82, and attaches the Martin Affidavit, Doc. #82-1, as an exhibit. Charles Plumbing has filed a reply and requests that the affidavit be stricken as a "sham affidavit" pursuant to *Aerel, S.R.L. v. PCC Airfoils, L.L.C.*, 448 F.3d 899, 906 (6th Cir. 2006). Doc. #91.

## I.    Procedural Issues and Background Facts

Nationwide, the insurer of the home of Kent and Joan Darding, files this suit for subrogation against Martin Construction and Custom Heating. The Amended Complaint alleges that an early morning fire occurred at the Darding home on January 29, 2017, originating at "the location above the basement fireplace and

---

[1]Charles has filed a Motion *in Limine*, Doc. #64, seeking to limit the testimony of Autio, Custom Heating's expert witness. That motion has been overruled by separate Entry.

directly below the first[-]floor fireplace at the front bottom face of the fireplace hearth and extension." Doc.#20, PAGEID#140. Plaintiff alleges that Martin Construction, the builder of the home, and Custom Heating, a subcontractor, "fabricated, assembled, supplied, constructed and installed the fireplaces in the Darding home, including all components, framework and connections necessary for same." *Id*.

The fire at the Darding's home occurred in the immediate area of the first-floor fireplace. The finished fireplace had a black mesh screen, no glass doors, a gas starter and a stone façade and hearth. Doc. #52, PAGEID#547. The fireplace was constructed using a prefabricated fireplace that is also called a "fireplace insert" or "fireplace box." Doc. #57, PAGEID#1059; Doc. #57-1, PAGEID#1195. David Martin ("Martin") of Martin Construction "set the fireplace insert in the hole." Doc. # 57, PAGEID# 1058. When Martin Construction installed the first-floor fireplace insert, the wood framing for the chimney chase way[2] was in place. The flues, chimney cap, stonework for the hearth, the gas line and piping for the gas starter, however, were not completed.[3] *Id*., PAGEID#1058-59. Although the fireplace was later inspected, Martin Construction does not recall being with an

---

[2] A "chimney chase" or "chimney chase way" is the area or structure around the metal flue pipes. The chase is usually built with wood or steel studs with an exterior that can include brick/stone veneer or wood siding or stucco.

[3] Kuhlman Construction ("Kuhlman") and David Brannum Construction contracted with Martin Construction to build the brick and stonework for the chimney and hearth and wood framing for the chase way, respectively. *Id*. at 1058-1059. They are not joined as parties in this litigation.

inspector when that occurred. Doc. #57, PAGEID##1064-65. He also does not know if the inspector looked at the construction and placement of the hearth during any inspection. *Id.*, PAGEID#1065.

Custom Heating attached the flues for the first floor and basement fireplaces from the point of attachment at the firebox, through the top of the chimney chase. It also put the cap on top of the chimney. Doc. #53, PAGEID#602; Doc. 53-2, PAGEID#632. Martin Construction supplied the flues to Custom Heating.

Charles Plumbing, a third-party defendant, installed the gas starters in the basement and first-floor fireplaces. Doc. #73, PAGEID#2158. The starters were located inside each firebox, under the log grate. Doc. #52, PAGEID#547. The firebox and flues were already in place when Charles Plumbing installed the gas supply line for the gas starters. Doc. #73, PAGEID#2159. To install the gas starters, Charles Plumbing had to run a propane gas supply line through the right side of the firebox, where a "knockout piece" was located. *Id.*, #73, PAGEID#2158. Charles Plumbing testified that he worked with Martin to insulate the location where the gas supply line passed through the firebox. *Id.* He states that Martin used a braising rod that Charles Plumbing loaned him to try to pack the insulation around the supply pipe. *Id.* Martin testified in his deposition that he did not look to see whether there was insulation in the hole where the propane gas supply line went through on the side of the fireplace insert. Doc. #57, PAGEID#1068.

4

During the evening of January 28, 2017, Kent Darding started a fire in the fireplace. To start the gas for a fire, a gas key valve, located to the right of the fireplace, was turned. *Id.*, PAGEID#546. A match was used to light the gas for the fire. The gas was turned off once the wood logs began to burn. *Id.*, PAGEID#547. Mr. Darding last observed embers in the fireplace at approximately midnight when he went to bed. Doc. #52, PAGEID#550. When the smoke alarm sounded at approximately 2:30 a.m. on January 29, 2017, Mr. Darding investigated and saw fire not in the fireplace but outside "on the sides and underneath, down in the lower part." *Id.* PAGEID#546. Because this was a fireplace insert, there was a gap between the stone and the insert. Flames were present on "both sides and underneath it where the stone stopped." *Id.*, PAGEID#550.

The Amended Complaint alleges that Martin Construction is in breach of a March 16, 2011, contract it entered into with the Dardings to construct their home. Doc. #20, PAGEID#154. It further alleges that it is the third-party beneficiary of a "Subcontract" between Martin Construction and Custom Heating. *Id.*, PAGEID##166-169. The "Subcontract" is dated June 4, 2012, and captioned "Registered Builder Contract." *Id.* Nationwide also alleges negligence claims against both Custom Heating and Charles Plumbing.

Martin Construction filed a cross-claim against Custom Heating for "indemnity, contribution and /or apportionment," Doc. #24, and a third-party complaint against Charles Plumbing. Doc. #21. Nationwide likewise asserted claims, pursuant to Fed. R. Civ. P. 14(a)(3), against Charles Plumbing. Doc. #26.

Each of the five parties have retained expert witnesses to determine the cause and origin of the fire. Extensive discovery, including depositions of the experts, has been conducted and is now complete.

## II. Standard of Review

Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact. *Id.* at 323; *see also Boretti v. Wiscomb*, 930 F.2d 1150, 1156 (6th Cir. 1991).

"Once the moving party has met its initial burden, the nonmoving party must present evidence that creates a genuine issue of material fact making it necessary to resolve the difference at trial." *Talley v. Bravo Pitino Rest., Ltd.*, 61 F.3d 1241, 1245 (6th Cir. 1995); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rule 56 "requires the nonmoving party to go beyond the

[unverified] pleadings" and present some type of evidentiary material in support of its position. *Celotex*, 477 U.S. at 324. "The plaintiff must present more than a scintilla of evidence in support of his position; the evidence must be such that a jury could reasonably find for the plaintiff." *Michigan Prot. & Advocacy Serv., Inc. v. Babin*, 18 F.3d 337, 341 (6th Cir. 1994).

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. In determining whether a genuine dispute of material fact exists, a court must assume as true the evidence of the nonmoving party and draw all reasonable inferences in favor of that party. *Id.* at 255. If the parties present conflicting evidence, a court may not decide which evidence to believe. Credibility determinations must be left to the fact-finder. 10A Wright, Miller & Kane, *Federal Practice and Procedure* Civil 3d § 2726 (1998). In determining whether a genuine dispute of material fact exists, a court need only consider the materials cited by the parties. Fed. R. Civ. P. 56(c)(3). "A district court is not . . . obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989), *cert. denied*, 494 U.S. 1091 (1990). If it so

chooses, however, the Court may also consider other materials in the record. Fed. R. Civ. P. 56(c)(3).

### III.  Legal Analysis

### A.  Custom Heating's Motion for Summary Judgment (Doc. #50)

Custom Heating's Motion seeks dismissal of Nationwide's breach of contract and negligence claims and Martin Construction's cross-claim.  The cross-claim alleges that if it is found liable for Plaintiff's claim, it is entitled to "common law and/or contractual indemnification, contribution[,] and/or apportionment" from Custom Heating.  Its claim for "contractual indemnification" is based on the Registered Builder Contract. Doc. #24, PAGEID#223.

Plaintiff has filed a response stating that it does not oppose Custom Heating's Motion.  Doc. #75.  Martin Construction, however, argues that Custom Heating's Motion should be denied since this "is an unusual battle of experts." Doc. #81, PAGEID#2200.

#### 1.  Nationwide's Amended Complaint

Nationwide, as the "subrogated insurer, stands in the shoes of the insured-subrogor." *Ohio Bur. of Workers' Comp. v. McKinley*, (2011) 130 Ohio St. 3d 156,162, 956 N.E. 2d 814. (citation omitted).  As a subrogated insurer, it has no greater rights than those that the Dardings had.  *Id.*  Although Plaintiff alleges both negligence and breach of contract claims, under Ohio law and the facts of this case, its only claim is for breach of an implied duty to construct a home in a

workmanlike manner based on contract. *Kishmarton v. William Bailey Constr., Inc.*, 93 Ohio St. 3d 226, 229, 754 N.E.2d 785, 2001-Ohio-1334 (answering certified question that the nature of an action by a vendee against builder-vendor for breach of a contract to build a residence *in the future* is the breach of an implied duty to construct the house in a workmanlike manner arising *ex contractu* (*emphasis added*)); *Cf. Velotta v. Leo Petronzio Landscaping, Inc.* (1982), 69 Ohio St. 2d 376, 433 N.E.2d 147(holding that "[a]n action by a vendee against the builder-vendor of a *completed* residence for damages proximately caused by failure to construct in a workmanlike manner using ordinary care—a duty imposed by law— is an action in tort * * *").

Because the Dardings had no contract with Custom Heating, Nationwide alleges it is an intended third-party beneficiary of the Registered Builder Contract between Martin Construction and Custom Heating. To create rights as an intended third-party beneficiary, Nationwide must establish that the Dardings were intended and not incidental third-party beneficiaries to the contract. *Huff v. FirstEnergy Corp.*, 130 Ohio St.3d 196, 200, 957 N.E.2d 3, 6 (Ohio 2011); *Hill v. Sonitrol of Southwestern Ohio, Inc.*, 36 Ohio St.3d 36, 40, 521 N.E.2d 780, 784 (Ohio 1988). To determine if a third person is an intended beneficiary, courts employ an "intent to benefit" test, *Hill*, 36 Ohio St.3d at 40, 521 N.E.2d at 784, and first look to the parties' expression of intent "in the language of the agreement." *Huff*, 130 Ohio St. 3d at 200, 957 N.E.2d at 7.

The language in the Registered Builder Contract, however, makes no reference to the Dardings or to any work to be performed at their home. Moreover, Custom Heating has testified that this contract was not for a specific job but was "just a general liability contract" for Martin Construction's "insurance audit." Doc. #53, PAGEID#611. Based on this testimony and the Court's review of the Registered Builder Contract, Nationwide has failed to establish any expression of an intent to benefit the Dardings and its contract claim as a third-party beneficiary fails.

Accordingly, because the Court finds that there is no genuine dispute of a material fact, Custom Heating's Motion as to Nationwide's Amended Complaint is sustained.

### 2. Martin Construction's Cross-claim

Custom Heating also moves for summary judgment on Martin Construction's cross-claim. The cross-claim asserts contractual indemnification based on the Registered Builder Contract, common law indemnification and contribution.[4] In general, indemnification and contribution claims arise only if a loss is suffered requiring a party to pay. *Stengel v. Columbus*, 74 Ohio App. 3d 608, 600 N.E. 2d 248 (Ohio Ct. App. 1991) (implied right of indemnity does not accrue until the party seeking indemnity actually suffers a loss although the

---

[4] "Indemnity arises from contract, either express or implied, and is the right of a person, who has been compelled to pay what another should have paid, to require complete reimbursement." *Worth v. Aetna Cas. & Sur. Co.*, 32 Ohio St. 3d 238, 240, 513 N.E.2d 253, 256 (Ohio 1987). Contribution in Ohio is governed by statute, R.C. 2307.25. It exists only in favor of a tortfeasor who has paid more than its proportionate share.

language of a contract controls when dealing with an express contract of indemnity); *Natl. Mut. Ins. Co. v. Whitmer*, 70 Ohio St. 2d 149152, 435 N.E. 2d 1121 (1982) (right of contribution is inchoate and accrues when a party has paid more than his share of the joint obligation).

In its motion, Custom Heating does not argue that Martin Construction, the general contractor, has no legal right to assert a cross-claim against it as a subcontractor. Instead, it asserts that, based on the expert testimony, there is no genuine dispute of a material fact that its installation of the flues to the fireplaces and placement of the cap on top of the chimney caused any damage to the Darding home, creating any liability for Martin Construction. Accordingly, it argues that its motion for summary judgment on the cross-claim should be granted before the issue of liability on Plaintiff's subrogated claim is resolved.

To determine whether Custom Heating's Motion on Martin Construction's cross-claim should be granted, the Court will review the testimony of the expert witnesses.

Plaintiff has identified two expert witnesses, Jim Hunter ("Hunter"), a cause and origin expert, and Nick Leone ("Leone"), an expert in mechanical engineering. Both opine that the installation of the flue piping and chimney cap was not deficient and did not contribute to the fire. Doc. #54, PAGEID#676; Doc. #56, PAGEID#880-881. They instead assert that the fire originated at the first-floor fireplace and that the cause of the fire was due to improper installation of the fireplace and a "gap" that existed at the front of the fireplace from missing metal

safety strips. Doc. #54, PAGEID#669; Doc. #56, PAGEID#878. David Jansing, Charles Plumbing's expert witness, agrees with Hunter and Leone as to the origin and cause of the fire. He also opines that the installation of the flue piping and chimney cap was immaterial to the origin and cause of the fire. Doc. #55, PAGEID#853. Custom Heating's expert witness, Autio, identifies "two possible causes" of the fire: improper installation of the first-floor firebox and/or the installation of the first-floor gas line. The Court notes that neither of these alleged "possible causes," however, implicates Custom Heating. Doc. #46, PAGEID#394.[5]

Martin Construction opposes Custom Heating's Motion arguing that "there is a dispute" whether Custom Heating negligently installed the chimney flue pipes" on the first-floor fireplace. Doc. #81, PAGEID#2195. It contends that "circumstantial evidence" of negligence exists based upon Custom Heating's installation of the flue piping for the basement fireplace. In making this argument, Martin Construction relies on the testimony of its expert witness, David Marzola ("Marzola").[6] *Id.*, PAGEID#2199.

Marzola testifies that the "the cause of the fire is undetermined" and that there are "multiple ignition scenarios." Doc. #58, PAGEID#1289. He states in his deposition that there are three improper installation issues that may have caused

---

[5]Charles Plumbing challenges the opinions of Custom Heating's expert witness under Fed. Evid. R. 702, and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). Doc. #64. This Motion is overruled in a separate decision and entry.

[6]Because the Martin Affidavit, included as an exhibit in the response of Martin Construction, does not reference Custom Heating or any of its installation work, it will not be considered in ruling on Custom Heating's Motion. Doc. #81-1.

the fire: (1) "improper installation of the fireplace insert" and failure to install metal safety strips, *Id.*, PAGEID##1293,1284; (2) improper installation of "the fireplace flue and wood framing" resulting in "inadequate clearance to the wood framing at the location between the wood framing and the flue pipe" *Id.*, PAGEID##1271 and 1273; and (3) improper installation of the propane gas supply line for the fire starter on the first-floor fireplace insert. *Id.*, PAGEID#1293. Marzola states in his deposition that he cannot reach a conclusion as to any one of the improper installation issues being "more than 50 percent probable to being the cause." *Id.* Specifically, as to Custom Heating's installation, Marzola testifies that he could not opine, within a reasonable degree of certainty, that: (1) the first-floor installation of the flue had any relationship to causing or contribute to causing the fire or (2) that the installation of the basement flue had any relationship to causing or contributing to the causing of this fire. Marzola also states that he has no facts "to suggest that installation of the chimney chase cap had any relationship whatsoever to cause or contribute to cause the fire." *Id.*, PAGEID#1289.

Ohio law is clear that "the expression of probability is a condition precedent to the admissibility of expert opinion regarding causation." *Stinson v. England*, 69 Ohio St.3d 451, 455, 633 N.E.2d 532, 537 (1994). This condition precedent "relates to the competence of such evidence and not its weight." *Id.* Accordingly, an expert opinion on causation must be more than a fifty percent likelihood of causation.

Based on the testimony of the expert witnesses, there is no dispute of a material fact that Custom Heating's installation of the flues to the fireplaces and placement of the cap on top of the chimney caused any damage to the Darding home creating liability for Martin Construction.  Marzola's testimony does not establish liability for Custom Heating for either indemnification or contribution, whether  the claim is for contractual indemnification under the Registered Builder Contract or implied indemnification based on the relationship of the parties, *Mahathiraj v. Columbia Gas of Ohio, Inc.*, 84 Ohio App.3d 554, 563–64, 617 N.E.2d 737, 743 (Ohio Ct. App. 1992)(implied indemnification exists  "where a party owes only secondary legal responsibilities and is passively negligent"), Marzola's opinion must be more than a fifty percent likelihood of causation. *Id.*, at 455. Similarly, under a claim of contribution, governed by Ohio Rev. Code Ann. § 2307.25(A), Martin Construction must establish that Custom Heating is liable for the damages and that it paid more than its proportionate share of the common liability. As seen above, Marzola's testimony does not permit such a conclusion.

Accordingly, Custom Heating's Motion as to the cross-claim of Martin Construction (Doc. #50) is sustained.

### B.  Charles Plumbing Motion for Summary Judgment (Doc. #63)

Charles Plumbing's Motion argues that there is no "competent evidence that any alleged act or omission of Charles [Plumbing] caused" the fire. Doc. #63, PAGEID#1840.  Plaintiff does not oppose the motion and contends that "the cause of the fire" "is not related to any work of Third[-]Party Defendant Charles." Doc. #76, PAGEID#2174.[7]  Martin Construction, however, asserts in its third-party complaint that Charles Plumbing is liable for "indemnity, contribution[,] and/or apportionment"[8]  for any recovery it must pay to Plaintiff, Doc. #21, PAGEID#172. Martin Construction argues that because the experts assert "multiple causes of the fire," genuine issues of material fact remain that preclude summary judgment. Doc. #82, PAGEID#2206.  Its response attaches the Martin Affidavit.  Doc. #82-1. Charles Plumbing contends that the Martin Affidavit should be stricken from Martin Construction's response because it is a "sham affidavit."  *Aerel, S.R.L.*, 448 F.3d at 906.

Before analyzing Charles Plumbing's Motion, the Court will first review the Martin Affidavit and his prior deposition testimony to determine if is a sham affidavit or can be considered in deciding Charles Plumbing's Motion.

---

[7]Nationwide states that "the third-party claims asserted by Plaintiff against Third[-]Party Defendant Charles by way its Rule 14(a)[  ](3) Complaint also fail as a matter of law in the event that the Motion for Summary Judgment filed by Third[-]Party Defendant Charles is granted." *Id.*, PAGEID#2175.

[8] Martin Construction has admitted that its Registered Builder Contract with Charles Plumbing, dated February 25, 2012, does not apply to the work at the Darding home. Doc. #63-1, PAGEID#1859.

### 1. The Martin Affidavit.

It is well-established that a party cannot defeat a motion for summary judgment "simply by contradicting his or her own previous sworn statement (by, say, filing a later affidavit that flatly contradicts that party's earlier sworn deposition) without explaining the contradiction or attempting to resolve the disparity." *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 806 (1999); *Kelso v. City of Toledo*, 77 Fed. Appx. 826, 834 (6th Cir. 2003). If an affidavit directly contradicts sworn deposition testimony and there is no "persuasive justification" for it, it will be stricken. *Aerel*, 448 F.3d 908. Absent a direct contradiction, an affidavit should not be stricken unless it is an attempt "'to create a sham fact issue.'" *Id.*, (quoting *Franks v. Nimmo*, 796 F.2d 1230, 1237 (10th Cir. 1986)). To determine whether the affidavit is creating a sham fact issue, a court must examine a "nonexhaustive list of factors" including

> whether the affiant was cross-examined during his earlier testimony, whether the affiant had access to the pertinent evidence at the time of his earlier testimony or whether the affidavit was based on newly discovered evidence, and whether the earlier testimony reflects confusion [that] the affidavit attempts to explain.

*Id.* at 908–09 (quoting *Franks*, 796 F.2d at 1237).

Charles Plumbing first asserts that Martin testified during his deposition that after he completed installation of the fireplace and after the hearth had been installed, he "did not recall seeing a gap." Doc. #57, PAGEID#1069.

> Q. But do you recall seeing a gap of the type and size that is depicted in the photographs that you just looked at after you had completed installation of the fireplace insert and after the hearth had been

installed at that location?

A.  No.

Q. You recall no gap?

A. No. No, that's not your question. Your question was did I recall seeing one.

Q. You do not recall seeing a gap?

A. Correct.

Q. You're not saying that there necessarily wasn't a gap, you just don't recall seeing a gap?

A. Correct.

Doc. #57, PAGEID#1069.

The Martin Affidavit references a "gap" at the fireplace. The relevant portion of the affidavit states, at paragraph 7, that "[T]here was no gap at the front of the firebox with exposed combustibles at the time of the completion of construction." Doc. #82-1, PAGEID#2215.  This paragraph of the affidavit is a direct contradiction of Martin's May 10, 2019, deposition testimony and provides no explanation for this change in testimony.  Accordingly, paragraph 7 of the Martin Affidavit is stricken and the Court will not consider it in deciding Charles Plumbing's Motion.

The remainder of the Martin Affidavit does not directly contradict Martin's earlier deposition testimony.  Moreover, based on a review of Martin's deposition testimony, it should not be stricken as a "sham affidavit." Martin's deposition testimony states that there "was a wooden floor system," Doc. #57, PAGEID#1069,

and that a subcontractor did the stonework for the hearth. Doc. #57,

PAGEID#1058.  He also testified that he did not recall if metal safety strips came

with the fireplace insert but, if they did, he would have installed them. *Id.*,

PAGEID##1068-1069.  Additionally, with respect to Charles Plumbing, Martin's

deposition states that he did not look to see whether insulation was provided at

the location where this propane gas supply line went through the hole on the side

of the fireplace insert. *Id.*, PAGEID#1068.  According to his deposition, Martin also

could not recall participating in packing insulation into the *wall* outside of the

insert (emphasis added). *Id.*, PAGEID#1078.

The Martin Affidavit regarding these topics reads as follows:

4. There was a hearth extension in front of the fireplace which was made of wood framing, covered in OSB board.

5. At some time after the installation of the firebox, the masonry sub-contractor installed metal mesh into which he troweled cement. He covered this with cement board flush with the metal fireplace insert. Then he covered the hearth extension with stone. There was no OSB left exposed. (See Hunter &Leone Report, Document 63-2, Page 51 of 63, Page I.D. 1917, and Document 63-2, Page 56 of 63, Page I.D. 1922.)

6. Such materials are not combustible.

8. I did not assist with the installation of the gas line or the gas log starter.

9. I did not have any role or take part in insulating the hole through which the gas line was installed. Such was done solely by Charles Plumbing.

Doc. #82-1, PAGEID#2215.

Although Martin's deposition testimony shows that he was cross-examined on some of the topics that appear in paragraphs 4, 5, 6, 8 and 9 of his affidavit, he was not specifically questioned about them.  Martin was "under no obligation to volunteer information not fairly sought by the questioner." *Aerel, S.R.L.*, 448 F.3d at 907.  Nor did he respond to the deposition questions in a way that indicated a total lack of knowledge on these subjects.  An affidavit should not reflexively be stricken since it can fill "a gap left open by the moving party and thus provides the district court with more information, rather than less, at the crucial summary judgment stage." *Id.*  Paragraphs 4, 5, 6, 8 and 9 of the Martin Affidavit do not contradict Martin's prior deposition testimony nor do they create a sham fact issue.  As such, paragraphs 4, 5, 6, 8, and 9 will not be stricken and will be considered by the Court in ruling on Charles Plumbing's Motion.

### 2. Charles Plumbing's Alleged Failure to Insulate the Hole in the Fireplace Insert.

Charles Plumbing argues that whether Martin Construction's cross-claim is for implied indemnification or contribution,[9] it fails since there is no "competent evidence" showing that there exists a causal connection between the alleged lack of insulation in the gas supply line running through the right side of the fireplace insert and the fire. Doc. #63, PAGEID#1840. He asserts that based on the testimony of all of the expert witnesses, there is no genuine issue of a material fact that his alleged failure to insulate was the cause of the fire. Because the expert testimony

---

[9] *See*, n. 4, *supra*.

differs somewhat from that analyzed in Custom Heating's Motion, the Court will review this testimony as it pertains to Charles Plumbing's Motion.

Although Nationwide's expert witnesses, Hunter and Leone, opine that the cause of the fire was the fireplace installation and the failure to install safety strips, Leone, a mechanical engineer, testifies that an alleged failure to "repack" the fiberglass insulation in the hole where the gas supply line goes into the fireplace insert is a "deficiency." Doc. #54, PAGEID##677 and 672-73; Doc. #56, PAGEID#882; Doc. #54, PAGEID#669; Doc. #56, PAGEID#878.  Leone explains, however, that this "deficiency" was not a cause of the fire.  Doc. #56, PAGEID#882.  Charles Plumbing's expert witness, David Jansing, is in agreement with Plaintiff's experts as to the cause and origin of the fire. Doc. #55, PAGEID#851.

Martin Construction argues that Charles Plumbing's Motion cannot be granted since Marzola, Martin Construction's expert witness, and Autio, Custom Heating's expert witness, opine that the failure to insulate may have caused the fire.  Marzola testifies that the alleged missing insulation at the juncture of the propane gas supply line into the fireplace insert is one of three possible "scenarios" of the fire.  He opines, however, that none of the three possible causes are greater than 50 percent. Doc. #58, PAGEID#1289-90. Moreover, this expert witness testifies that he could not give an opinion that the alleged missing insulation was more likely than not the cause of the fire. *Id.*, PAGEID#1290.

Autio testifies, "within a reasonable degree of certainty," that there are only two "possible causes" for the fire: "heat coming out through the hole provided for the gas line on the right side of the firebox" or embers coming out from the fireplace and falling through between the juncture of the hearth and the firebox. Doc.#59, PAGEID#1409. As to the first "possible cause," Autio explains that heat from the fireplace traveled through the uninsulated hole resulting in the wood frame drying out, lowering its ignition temperature and creating pyrolysis, the drying out of wood. Doc. #59, PAGEID#1840.   At some unspecified point in time, it "potentially will catch fire [and] ignite." *Id.*, PAGEID#1414.  He asserts that pyrolysis could occur in a span of five years, the approximate amount of time that the Dardings lived in their home, but admits that he did no test to determine the amount of heat transfer required to create pyrolysis on the framing of the fireplace. *Id*, PAGEID#1438.  Autio also testifies in his deposition that he was skeptical of the second "possible cause" of the fire, embers falling through a gap between the hearth and the fireplace insert.  He states that as between the two "possible causes," it was "hard to imagine that many embers coming out and dropping down" and causing the fire "but I can't eliminate it."  *Id.*, PAGEID#1433. He testifies that the ignition source for the fire "would probably most likely have been the heat from the fireplace" and not embers or sparks escaping out of the uninsulated hole. *Id.*, PAGEID#1414.

Ohio law is clear that experts are "precluded from engaging in speculation or conjecture with respect to possible causes."  *Stinson*, 69 Ohio St.3d at 457.

Moreover, expert opinions must be expressed in terms of probability. *Id.* at 455. Although Marzola and Autio may rebut Plaintiff's theories with alternative causes, once offered, the alternative causes "must be expressed in terms of probability irrespective of whether the proponent of the evidence bears the burden of persuasion with respect to the issue." *Id.* at 451.

The deposition testimony establishes that Marzola cannot state an opinion that Charles Plumbing's alleged failure to insulate is more likely than not the proximate cause of the fire. Accordingly, Marzola's expert testimony does not create a genuine issue of a material fact as to Charles Plumbing's Motion. The same, however, cannot be said of Autio's testimony. Although this expert repeatedly testifies in his deposition as to two "possible causes," he also testifies that the ignition source for the fire "would probably most likely have been the heat from the fireplace" and not the theory of the gap implicating Martin Construction. *Id.*, PAGEID#1414. Because the evidence must be viewed in the light most favorable to the nonmoving party and credibility judgments should not be made in deciding motions for summary judgment, Autio's testimony of "probably most likely" precludes summary judgment.

## IV. Conclusion

For the reasons set forth above, the Motion for Summary Judgment of Defendant Custom Heating & Air Conditioning, Inc., Doc. #50, is SUSTAINED. The Motion of Third-Party Defendant George Robert Charles, dba Charles Plumbing, to

Strike paragraph 7 of the affidavit of David Martin, Doc. #82-1, is SUSTAINED and OVERRULED as to the remainder of the affidavit. The Motion for Summary Judgment of Third-Party Defendant George Robert Charles, dba Charles Plumbing, Doc. #63, is OVERRULED.

The following claims remain pending for trial: (1) Plaintiff Nationwide Agribusiness Insurance Company's claims as alleged in its Amended Complaint against Defendant David Martin Construction Company, Doc. #20; (2) Plaintiff Nationwide's cross-claims against substituted party William P. Allen, Administrator of the Estate of George Robert Charles for George Robert Charles dba Charles Plumbing, Doc. #26; and (3) Defendant David Martin Construction Company's Third-Party Complaint against substituted party William P. Allen, Administrator of the Estate of George Robert Charles for George Robert Charles dba Charles Plumbing, Doc. #21.

Date: October 26, 2020

*Walter H. Rice* (tp - per Judge Rice authorization after his review)

WALTER H. RICE
UNITED STATES DISTRICT JUDGE